# IN THE COURT OF APPEALS OF IOWA

No. 21-0790
Filed August 18, 2021

**IN THE INTEREST OF D.B., JR.,**
**Minor child,**

**D.B., SR., Father,**
        Appellant,

**MARTI D. NERENSTONE,**
        Guardian ad Litem, Appellant
_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagen, District Associate Judge.


A father and the guardian ad litem for a minor child appeal the district court's order terminating the father's parental rights. **AFFIRMED.**


Roberta J. Megel of State Public Defender's Office, Council Bluffs, for appellant father.

Marti D. Nerenstone, Council Bluffs, Guardian ad Litem for appellant minor child.

Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant Attorney General, for appellee State.


Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

A father and the guardian ad litem (GAL) for a minor child appeal the district court's order terminating the father's parental rights. There is sufficient evidence in the record to support termination of the father's parental rights. The State engaged in reasonable efforts to reunite the father and child. Termination of the father's parental rights is in the child's best interests. The court properly determined none of the exceptions to termination should be applied. Accordingly, we affirm the decision of the district court.

## I. Background Facts & Proceedings

D.B., father, and C.B., mother, are the parents of D.B., who was born in 2009. The family has a long history of involvement with the Iowa Department of Human Services (DHS).[1] The most recent DHS involvement with the family began in April 2019, due to reports the mother was using methamphetamine while caring for the child. The child was removed from the parents' custody on June 14 and placed with the maternal grandmother.[2]

On September 20, the child was adjudicated to be in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2019). The father was ordered to complete substance-abuse and mental-health evaluations and

---

[1] The parents have a history of drug use and domestic violence. Juvenile court proceedings were initiated in June 2012, then closed in May 2013. Proceedings were initiated again in December 2013, then closed in March 2015. New proceedings were initiated in December 2016, and were closed in October 2018. At times, the child was removed from the parents' care during these prior court proceedings.

[2] By the time of the termination hearing, the child had been removed from parental custody six times in a period of nine years.

follow all recommendations. The father did not remain in contact with DHS or participate in services. He did not attend court hearings.

The maternal grandmother reported that the father contacted her regarding visits, but she refused and referred him to DHS. The father contacted DHS on June 24, 2020. When a social worker attempted to contact him at the telephone number he provided, the number was out of service. A DHS worker talked to the father in August and he declined to participate in any services.

On November 16, the State filed a petition seeking to terminate the father's parental rights.[3] The termination hearing was held on February 23, 2021. The child was in shelter care due to behavioral problems. The court appointed special advocate (CASA) testified the child was on an emotional roller coaster with the father because the father would engage with him and bring him gifts, then let him down. The CASA testified concerning stability and consistency for D.M. if the father's rights were terminated. A DHS worker testified the child could not be placed with the father because there was insufficient information concerning the father's stability and parenting abilities.

The father testified that he believed he had a bond with the child. He stated he was being treated for throat cancer and had other health problems. The father asserted that he spent time with the child without the knowledge of DHS. He testified he did not believe he needed supervised visitation and did not want to have visits through DHS. The father indicated he did not need to participate in any services. The father was living with a friend but stated he would get an apartment

---

[3] The State did not seek to terminate the mother's parental rights.

if the child was placed in his care. He also stated the child could be placed with the mother. The child, who was then eleven years old, testified that he did not want the father's rights to be terminated. The child stated he had a bond with the father.

The district court terminated the father's parental rights under section 232.116(1)(b), (e), and (f) (2020). The court found:

> The father has been ordered to do various services, and he has not complied with the services offered. The child has been out of his parents' care for nineteen of the last twenty-two months with little improvement towards reunification. He continues to wait for his father to engage in services. This child needs and deserves permanency in his life.

The court also found, "This child could not be reunified with his father today, or in the foreseeable future." The court declined the father's request for additional time to work on reunification. The court determined the State engaged in reasonable, but unsuccessful, efforts to reunify the child with the father. The court concluded that termination of the father's parental rights was in the child's best interests. The father and GAL appeal the district court's decision.

## II. Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

### III.   Sufficiency of the Evidence

The father and GAL claim the State did not present sufficient evidence to support termination of the father's parental rights.  "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination."  *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015), *as amended* (Oct. 16, 2015).  "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm."  *Id.* at 435.  We focus on the termination of the father's parental rights under section 232.116(1)(f).[4]

**A.**   The GAL asserts the State did not present clear and convincing evidence to support the third element, which is "[t]he child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, *or* for the last twelve consecutive months and any trial period at home has been less than thirty days."  Iowa Code § 232.116(1)(f)(3) (emphasis added).  The GAL states the child was in a trial home placement with the mother from September 8, 2020, until November 5, a period of fifty-nine days.

---

[4] A parent's rights may be terminated under section 232.116(1)(f) if the court finds:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Section 232.116(1)(f)(3) presents two alternative tests. The circumstances of this case may not come within the second alternative, as the trial home placement with the mother was longer than thirty days. *See id.* However, the circumstances come within the first alternative because the child was removed from the parents' custody on June 14, 2019, and the termination hearing was held on February 23, 2021, twenty months later. Out of the last eighteen months before the termination hearing, the child had been out of the parents' custody for at least twelve months. We conclude the State presented clear and convincing evidence to support the third element of section 232.116(1)(f).

**B.**     The father claims the State did not prove the fourth element—the child could not be safely placed in his care. *See id.* § 232.116(1)(f)(4). We consider whether the child could be returned at the time of the termination hearing. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa Ct. App. 2010); *In re C.W.*, 554 N.W.2d 279, 282 (Iowa Ct. App. 1996).

The DHS worker assigned to the case testified the child could not be placed with the father at the time of the hearing because she did not have enough knowledge of the father's stability or parenting abilities. The father refused to participate in any services, keep in contact with DHS, or attend supervised visitation. The father did not attend any of the court hearings except the termination hearing. Until he testified at that hearing, DHS workers did not even know where the father lived. The district court highlighted the father's "untreated chemical dependency, untreated mental health problems, domestic abuse issue, a lack of appropriate housing and employment, minimal compliance, criminal activity and a lack of verification of commitment" remained after nineteen months

of services. Given the father's failure to participate in services to address these problems, we conclude there is clear and convincing evidence in the record to show the child could not be safely returned to the father's care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4).

**C.**     As part of his claims concerning the sufficiency of the evidence, the father contends the State did not engage in reasonable efforts to reunite him with the child. "Reasonable efforts to reunite parent and child are required prior to termination of parental rights." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). A determination of whether services offered are reasonable depends upon the circumstances of the case. *In re S.J.*, 620 N.W.2d 522, 525 (Iowa 2000).

The father's petition on appeal does not specify what additional services should have been offered to him, stating only "there was a failure of reasonable efforts by DHS to reunite the family." Services were offered to the father, but he was unwilling to participate. Further, the father did not request any additional reasonable efforts prior to the termination hearing. Rather, he declined to participate in any offered services. Where a parent "fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). Similarly, we will not review a reasonable efforts claim unless it is raised prior to the termination hearing. *See T.S.*, 868 N.W.2d at 442; *In re L.M.W.*, 518 N.W.2d 804, 807 (Iowa Ct. App. 1994) (stating that a party challenging reasonable efforts must do so prior to the termination hearing).

The district court found, "Reasonable, but unsuccessful, efforts were made to reunify the child with his father." We conclude the services offered to the father

were reasonable under the circumstances of the case and we find sufficient evidence in the record to support termination of the father's parental rights under section 232.116(1)(f).

### IV.    Best Interests

The father and the GAL cite to section 232.116(2), which states termination must be in a child's best interests.  In considering a child's best interests, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2)."  *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).  "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *Id.*

The father and the GAL assert the court should have given more deference to the child's stated preference to maintain a relationship with the father.  In a best interest analysis, if a child has been placed with a foster family, the court should consider "[t]he reasonable preference of the child, if the court determines that the child has sufficient capacity to express a reasonable preference."  Iowa Code § 232.116(2)(b)(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).  By its terms, section 232.116(2)(b)(2) applies "*If* the child has been placed in foster care." *See In re K.A.*, No. 18-0232, 2018 WL 1633524, at *3 (Iowa Ct. App. Apr. 4, 2018) (emphasis added).  The child was not in foster care at the time of the termination hearing, and, therefore, section 232.116(2)(b)(2) does not apply.

Furthermore, the court should consider whether a child's preference is reasonable under the facts of the case. *See In re B.A.L.*, No. 12-1059, 2012 WL 3860816, at *4 (Iowa Ct. App. Sept. 6, 2012) (finding a child's preference to live with the father was not reasonable because he could not provide a safe environment). The CASA assigned to this case testified:

> But [the child] is up and down. His letdowns, when [the father] lets him down, that emotional kind of roller coaster that [the child] goes through, that weighed a lot into me thinking that it is in [the child's] best interest [to terminate parental rights] based on the past relationship over the three years that I've seen.

She stated that terminating the father's parental rights would provide more stability and consistency for the child.

The father created a roller coaster of emotions for the child—sometimes appearing in the child's life and showering the child with gifts, then disappearing for periods of time. The father was not able to provide the stability needed by the child to help address the child's behavioral problems. We conclude that termination of the father's parental rights is in the child's best interests.

## V.     Exceptions

The father and GAL contend the district court should have decided to not terminate the father's parental rights based on the exceptions to termination found in section 232.116(3). The court may decide to not terminate a parent's rights if, among other things, "[a] relative has legal custody of the child," "[t]he child is over ten years of age and objects to the termination," or "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(1)(a), (b), (c).

"The factors weighing against termination in section 232.116(3) are permissive, not mandatory." *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019) (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)). "The court may exercise its discretion in deciding whether to apply the factors in section 232.116(3) to save the parent-child relationship based on the unique circumstances of each case and the best interests of the child[ ]." *Id.* (citing *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)).

The district court did not address this issue, and we question whether it has been preserved for our review. *In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal."); *In re C.D.*, 508 N.W.2d 97, 100 (Iowa Ct. App. 1993) ("Matters not raised in the trial court, including constitutional questions, cannot be asserted for the first time on appeal."). A motion pursuant to Iowa Rule of Civil Procedure 1.904(2) is essential to the preservation of error when a trial court does not resolve an issue. *In re A.M.H.*, 516 N.W.2d 867, 872 (Iowa 1994).

Even if the issue had been properly raised, we find the evidence does not support a finding that it would be in the child's best interests to apply an exception to termination. Although the child objected to the termination, as discussed above, the relationship was not beneficial to the child due to the father's lack of consistency. The district court found the child did not have a close bond with the father. The evidence does not show that the relationship is so close that it would be appropriate to deny termination. Additionally, the child was not in the legal custody of a relative. J.B.'s custody remained with DHS at the time of the

termination hearing.  We conclude the court properly did not apply an exception to termination under section 232.116(3).  We affirm the decision of the district court.

**AFFIRMED.**